## LONG BELL LUMBER CO. v. HAMPTON et al. (No. 3284.)

Court of Civil Appeals of Texas. Amarillo. Oct. 9, 1929.

Rehearing Denied Oct. 30, 1929.

Berry, Stokes, Warlick & Gossett, of Vernon, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellees.

RANDOLPH, J. The following statement of the nature and result of this suit is taken from appellant's brief, as such statement is admitted by appellees to be substantially correct:

"Suit by the Long Bell Lumber Company, a corporation, against R. M. Hampton, for the sum of $1,232.45, on open verified account praying for personal judgment against Hampton and judgment against him and the other defendants named for a foreclosure of its asserted constitutional and statutory lien against certain real property in the town of Vernon.

"All defendants answered with general demurrer, general denial. The only real controversy grew out of appellee Hampton's having further plead a denial of any indebtedness to appellant on account of it owing him a greater sum of money, said indebtedness to him as alleged was founded upon certain oral contracts and understandings he had had with Mose Wright, local manager appellant corporation, whereby upon certain dwelling construction jobs appellant was financing by furnishing labor and building materials, it was agreed that appellant would pay him for all plumbing work and materials and all property, real and personal, done, sold or delivered, for third parties, by appellee Hampton. The account set up in said counter claim amounted to $1,748.60 and appellee prayed for judgment against appellant for the balance between said accounts in his favor.

"Appellant answered said counter claim by general demurrer, special exceptions and general and special denial.

"The case was submitted to the jury by two special issues, being inquiries to said jury as to the amount due each other upon said respective accounts sued upon, and in answer to such issues the jury found in favor of each of said accounts with a balance of $349.95, in favor of appellee Hampton's account, and upon such findings a judgment in favor of appellee was rendered against appellant and in favor of all other defendants with a refusal of appellant's foreclosure, from which judgment appellant has seasonably perfected its appeal to this Honorable Court for rendition of said judgment in its favor or reversal and remand of said cause for new trial."

Appellant's propositions Nos. 1, 2, 3, and 4, presenting alleged errors of the trial court for our review are as follows:

"First Proposition. Appellee Hampton's

counter claim showing upon its face that appellant was a mercantile corporation, and based wholly upon alleged obligations clearly ultra vires and prohibited by law, the trial court should have sustained appellant's general denial to said counter claim."

"Second Proposition. The judgment of the trial court allowing recovery upon appellee Hampton's counter claim is contrary to law, in that same is founded wholly upon oral contracts and promises within the statute of frauds, ultra vires, and prohibited by law."

"Third Proposition. The law prohibiting appellant corporation to buy real estate except where reasonably necessary to conduct its chartered business or secure payment of existing debts, and the sum of $742.00 of appellee's recovery against appellant being for two town lots deeded to third parties and said transaction not being within the statutory purposes of said corporation, the trial court should have instructed the jury, as requested by appellant, not to consider said two items in appellee Hampton's counterclaim for two town lots."

"Fourth Proposition. Appellee's counterclaim in Paragraph 7, showing on its face that appellant corporation was charged with oral ultra vires promises to pay for debts of third parties, was within the statute of frauds and the trial court should have sustained appellee's special exception No. 4, to said paragraph of such counter-claim."

■ Where a corporation transacts its business under a general manager, the conduct of the business of the corporation by him binds the corporation, if performed within the scope of the corporation's business. "As a corporation can only act through its agents, the general manager or general agent is virtually the corporation itself." Sealy Oil Mill & Mfg. Co., v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850, 852.

This being true, and the evidence showing that the business was transacted by the general manager of the appellant corporation, his contract, made in the course of the business of the corporation, was the contract of the corporation just as much as though transacted under direct authority of the president and board of directors of the corporation. Therefore the appellant is liable for the contract made with the appellee Hampton by the manager Wright, if such contract was within the power of the corporation to make under its charter.

The defendants, appellees, alleged in their special answer as follows:

"* * * That at and prior to the time said material and supplies were sold by the said Long Bell Lumber Company to the defendant R. M. Hampton, there was an oral agreement between the said R. M. Hampton and Mose Wright, authorized agent and general manager of said Long Bell Lumber Company of Vernon, Texas, by the terms of which said agreement the said Mose Wright, acting for the said Long Bell Lumber Company, agreed that the said Long Bell Lumber Company would not assert a claim or any lien against the property aforesaid by reason of furnishing said material and supplies referred to in plaintiff's petition. Defendant Hampton advised the said Mose Wright, general manager of the said Long Bell Lumber Company at Vernon, Texas, that in order to finance the construction of said house, it would be necessary for him to procure a loan thereon, which he contemplated securing from the Guaranty State Building & Loan Association at Wichita Falls, Texas, and that such could not be secured unless the said Wright would agree to sell said supplies upon open account, waiving any lien rights which said Long Bell Lumber Company might have under the statute by reason of material and supplies furnished for the construction of said building. That said Mose Wright agreed that if Hampton would purchase said supplies from the Long Bell Lumber Company said Long Bell Lumber Company would not assert any such lien for said material and supplies so furnished. Thereafter, the said Hampton proceeded with the construction of said building and applied for loan thereon to the said Guaranty State Building & Loan Association of Wichita Falls, Texas, apprizing said association of the agreement aforesaid. Relying thereon, the said Guaranty State Building & Loan Association loaned to the owner of said property the sum of $3,900.00, taking as security a deed of trust lien upon said property; whereby it became entitled to a first and superior lien thereon to secure its aforesaid note in the principal sum of $3,900.00, on which note there was due and payable a balance, including principal and interest, of $3,926.27 on the 7th day of January, A. D. 1929, with interest on such amount from and after such date at the rate of 8.4 per cent. per annum.

"The said Long Bell Lumber Company had as its attorney in Vernon, Texas, O. T. Warlick, whose duty it was, as such attorney, to look after all the legal affairs of the said Long Bell Lumber Company, and at the time the said Guaranty State Building & Loan Association made the loan aforesaid, it was advised by the said Warlick that there was no lien or encumbrance against said property, and in making said loan the said Guaranty State Building & Loan Association relied upon said advice of the duly authorized attorney of said Long Bell Lumber Company, as well as upon the agreement theretofore made between the said manager of the Long Bell Lumber Company and the said R. M. Hampton that the former would assert no lien or claim on said property by reason of furnishing material and supplies used in the construction of the house on the lots in question. The said Guaranty State Building & Loan As-

sociation would not have made said loan except for the agreement aforesaid, and the advice of said Warlick, representative of the Long Bell Lumber Company, but relying expressly thereon the said Guaranty State Building & Loan Association advanced said money, taking as security therefor a first lien upon the property aforesaid, and would not have done so except for the agreement and advice aforesaid by reason of which the said Long Bell Lumber Company is now estopped to assert a lien against said property for the material and supplies above mentioned.

"And for further special answer, if such be required, the said defendant R. M. Hampton says that he is not indebted to the Long Bell Lumber Company by reason of the following facts, to-wit: this defendant became acquainted with the manager of the Long Bell Lumber Company at Vernon, Texas, along in December of 1926 or January of 1927, and thereafter entered into a contract and agreement with the said Long Bell Lumber Company acting through its authorized agent, Mose Wright, whereby it was stipulated that if the defendant Hampton would furnish certain property, plumbing work and plumbing material on specified jobs the said Long Bell Lumber Company would pay the said defendant Hampton therefor, it being the plan and purpose of the Long Bell Lumber Company to finance certain contractors and owners in the construction of certain houses, under which plan the said Long Bell Lumber Company contemplated that it would make a considerable profit by reason of selling the said owners and contractors material and supplies needed in said construction work. The Long Bell Lumber Company agreed that on such jobs whereon the Long Bell Lumber Company was doing such financing, the said Long Bell Lumber Company would pay the said Hampton direct for all property, labor, material and supplies which the said Hampton furnished on the particular jobs in question. Pursuant to this arrangement and general agreement, the said Hampton furnished property, material and supplies on several jobs, and was paid direct by the Long Bell Lumber Company for the material and labor so furnished, and on several of the jobs hereafter referred to, the defendant Hampton was paid a portion of the sums due him by the said Long Bell Lumber Company, but the said Long Bell Lumber Company has failed and refused to pay a balance due and owing this defendant in the sum of $1,748.60, as shown by the itemized statement of account hereto attached and marked 'Exhibit A' for all purposes."

■ The appellant attempts to raise the question of ultra vires under its general demurrer. A general demurrer is insufficient to raise such issue where appellees have alleged a contract fully performed by appellees and unperformed by appellant, as such defenses of ultra vires must be specially pleaded in order to be available and cannot be urged for the first time on motion for rehearing or on appeal. A plea of ultra vires is a plea in confession and avoidance and must be specially pleaded. Wallace Bank & Trust Co. v. First National Bank of Fairfield et al., 40 Idaho, 712, 237 P. 284, 50 A. L. R. 316; 4 Fletcher's Ency. on Corporations, 4603, § 3068.

A general demurrer admits the truth of the facts stated, hence cannot be used to present for the first time a plea in confession and avoidance. Pan. Tel. & Tel. Co. v. Kellogg, etc., 62 Tex. Civ. App. 402, 132 S. W. 963; Security Investment Co. v. Flannagan (Tex. Civ. App.) 241 S. W. 702; San Jacinto Oil Co. v. Texas Oil Co., 47 Tex. Civ. App. 477, 105 S. W. 1163.

The appellant's charter is not in evidence, and whether or not the appellant corporation had the power to make this contract granted it under its charter, cannot be determined from the evidence. Brown v. Texas Cactus Hedge Co., 64 Tex. 396, 400.

But, should we be wrong in this, there is another question which we will discuss from the evidence that will determine the matter.

■ Was the contract entered into ultra vires as shown by the evidence, even if the charter were in evidence limiting such corporation to a general lumber and building materials business? On the face of the pleadings, the appellant is a foreign corporation, doing business in this state under a permit. It is alleged to be incorporated under the laws of the state of Missouri, and it is alleged to be engaged in a general lumber and building materials business. Therefore, passing upon the case as though that allegation had been substantiated by the evidence, we hold that the evidence in the case does not disclose that the corporation transacted any business prohibited by its charter, but, on the contrary, was transacting business when it executed this contract, in furtherance of its special line of business. In the case of Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co., supra, it is held that a corporation, in the transaction of its business, the business for which it was organized, has the same latitude as the individual in the same character of business, in those things that are essential to the successful operation of that particular business. We therefore overrule appellant's contention that the contract pleaded was without the power of the corporation to make.

■ A corporation cannot accept the benefits of a contract fully performed by the other party and then refuse payment on the ground that the contract was ultra vires. The appellant agreed to pay Hampton for material and labor performed, and Hampton conveyed certain designated lots to certain designated contractors, who were financing building operations through the appellant, and Hampton also

furnished plumbing materials and labor upon the job upon which the matters in controversy arise, and on the completion of the contract the appellant had received the benefits of the contract. This being true, the appellant could not refuse to comply with its part of said contract on the ground that it was ultra vires. Kincheloe Irr. Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S. W. 1187; Bond v. Terrell Cotton & Woolen Mfg. Co., 82 Tex. 309, 18 S. W. 691; Chafin v. Main Island Coal Co., 85 W. Va. 459, 102 S. E. 291, 11 A. L. R. 657.

Having considered all assignments and propositions, and finding no reversible error, we affirm the judgment of the trial court.